UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

QATAR INVESTMENT & PROJECTS
DEVELOPMENT HOLDING COMPANY W.L.L (QIPCO),

and

HIS HIGHNESS SHEIKH HAMAD BIN ABDULLAH BIN KHALIFA AL-THANI

    Plaintiffs,

  v.                                             Case No. 17-CV-553

JOHN DOE
a/k/a "The Muslim Issue"

    Defendant.

---

## STATEMENT OF RECORD FACTS

Pursuant to this Court's Procedure to Be Followed on Motions for Injunctive Relief, Plaintiffs, Qatar Investment & Projects Development Holding Company W.L.L and His Highness Sheikh Hamad bin Abdullah bin Khalifa Al-Thani, submit this proposed statement of record facts in support of its Motion for a Temporary Restraining Order:

**I.    PARTIES**

    1.    Qatar Investment & Projects Development Holding Company W.L.L ("QIPCO") is a prominent family-run investment company based in Doha, Qatar. (*See* Verified Complaint, July 18, 2017, ECF #1 "Verified Complaint", ¶ 1.)

    2.    His Highness Sheikh Hamad bin Abdullah bin Khalifa Al-Thani ("His Highness Al-Thani") is an individual citizen of Qatar who also has property available in London, England, for occupation with family members. (Verified Complaint, ¶ 2.)

    3.    Defendant is one or more individuals that operate a web site entitled "The Muslim

Issue" ("Website") in the United States of America, London and other locations. The exact location of Defendant is unknown at this time. (Verified Complaint, ¶ 3.)

    4.    This is an action for defamation under applicable state law. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because: (a) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs; and (b) Plaintiffs are citizens of foreign countries and Defendant is a citizen of a state within the United States of America. (Verified Complaint, ¶¶ 4, 5.)

    5.    His Highness Al-Thani is a member of the Qatar royal family. He is one of the owners, the chief executive officer and a director, of QIPCO. (Verified Complaint, ¶ 7.)

    6.    QIPCO is a global, prominent, family-run investment company that has a diverse range of interests, including real estate, construction, oil and gas, trading and services, finance, health and horseracing. (Verified Complaint, ¶ 8-12.)

    7.    His Highness Al-Thani is a well-known art and jewelry collector. Through QIPCO and the Al-Thani Collection, he arranges for the loan of valuable collections to prominent museums for exhibition in locations throughout the world, including (without limitation) London, Paris and New York. Also through QIPCO, he has also established a cultural foundation that has the objects of promoting art, culture and education. (Verified Complaint, ¶ 13.)

    8.    Defendant is the owner and operator of the Website, which is entitled "The Muslim Issue" and is published at: https://themuslimissue.wordpress.com/ (Verified Complaint, ¶ 14.)

    9.    The Website is a hate site against Muslims throughout the world. (Verified Complaint, ¶ 15.)

10. Defendant claims on its Website that the Website has over 26 million readers and 14,164 followers. (Verified Complaint, ¶ 16.)

11. The Website touts its global presence, boasting: "visitors from over 150 countries and over 21 million visitors since August 2012. We average anywhere from 15,000-35,000 visitors per day. Content is widely searched by visitors without any particular relevance to publishing date. At least half of daily visitor stats refer to older published content." The Website also claims the United States of America as its "Top Countr[y]" for visitors. (*See* Declaration of Melinda S. Giftos, September 1, 2017, ECF # 12, "Giftos Decl.", ¶ 20, Ex. F.)

12. The Website is published through the popular "Word Press" self-publishing site provided by Automattic, Inc. (Verified Complaint, ¶ 17.)

13. The Website and Defendant's related social media sites are all directed toward and viewable in many countries throughout the world, including to the United States and residents in Wisconsin and this judicial district. (Verified Complaint, ¶ 18.)

14. Defendant solicits subscribers and followers to the Website. Residents of Wisconsin and this judicial district have accessed and viewed the Website. (Verified Complaint, ¶ 19.)

15. Defendant offers for sale certain merchandise through its Website via the vendor Spreadshirt. Defendant's products may be and have been purchased by residents in Wisconsin and this judicial district. (Verified Complaint, ¶ 20; Giftos Decl., ¶ 22, Ex. H.)

16. Defendant also solicits donations and advertising spaces on its Website. (Verified Complaint, ¶ 21.)

17. Defendant accepts donations through its Website through the vendor, Fundly. (Giftos Decl., ¶ 23, Ex. I.)

18.     Defendant claims that it reads all emails and comments provided through the Website. (Giftos Decl. ¶ 21, Ex. G.)

## II.   DEFAMATORY ARTICLE

19.     On October 13, 2015, Defendant posted an article on the Website entitled "Czech Republic: Qatar pedophile Prince issued warrant over sex abuse" ("Defamatory Article"). (Verified Complaint, ¶ 22.)

20.     In the Defamatory Article, Defendant claimed to be republishing an article dated October 9, 2015 from the Prague Daily Monitor entitled "Court Sentences Qatari Prince to one year for girls' abuse" ("Prague Article"). (Verified Complaint, ¶ 23.)

21.     However, in addition to republishing the content of the Prague Article, in the Defamatory Article, Defendants posted a photograph of His Highness Al-Thani with the caption depicted below:



[Sheikh Hamad bin Abdullah bin Khalifa Al Thani, Chief Executive of QIPCO Holding. He is Britain's Royal Ascot's first commercial partner. This file photo did not come with the original article. TMI]

(Verified Complaint, ¶ 24.)

22.   Defendant also authored and included the following text in the Defamatory Article, which was not a part of the Prague Article:

> 11 months and 8 days for sexually abusing children and teens???
> Are they serious?
>
> The pedo "prince's" full name is **Hamad bin Abdallah bin Thani Al Thani** from the terror funding state of Qatar. These people are such notorious criminals, they do everything they can to assure their faces are not seen on the internet or in media.
>
> Why is the world giving these nomad savages the titles of royalty? NONE of them has ever been royalty. They were locust eating, camel-piss drinking, barefoot, illiterate tribal desert rugrats who buried their own daughters alive in the Arabian sand until a few decades ago. You can't get the savagery out of the savage. If the US had not handed oil wealth to these animals, who have never accomplished anything through history, they would have still lived off the of the insects of desert and terrorism would been nothing much but a mosquito bite on the earth today.

(Verified Complaint, ¶ 25.)

23.   The information in the Prague Article appears to accurately report a proceeding in the Czech Republic involving a Qatari prince named "Thani," whereby the prince was sentenced to prison for sexually abusing underage girls.   (Verified Complaint, ¶ 26.)

24.   The Prague Article did not, however, include an image of His Highness Al-Thani, nor include Plaintiffs' names or any mention of their business activities. (Verified Complaint, ¶ 27.)

25.   The Prague Article did not mention Plaintiffs' names, include photos of them, or discuss their business activities because they were not in any way involved in the conduct reported in the Prague Article.  (Verified Complaint, ¶ 28.)

26. Several comments by readers of the Defamatory Article pointed out to Defendant that s/he had identified and included a photograph of the wrong individual. (Verified Complaint, ¶ 32; *see also* Exhibit A.)

27. Defendant did not correct the Defamatory Article nor remove the incorrect content after receiving the comments. (Verified Complaint, ¶ 33.)

28. On or about April 20, 2017, Plaintiffs became aware of the existence of the Defamatory Article and immediately hired counsel to address the false allegations contained in the Defamatory Article. (Verified Complaint, ¶ 34.)

### III. EFFORTS TO IDENTIFY THE DEFENDANT AND REMOVE THE DEFAMATORY ARTICLE

29. Plaintiffs' counsel made many attempts to determine the identity and location of Defendant to request Defendant remove or alter the Defamatory Article. (Verified Complaint, ¶¶ 35-43; Giftos Decl. ¶¶ 4-19.)

30. Plaintiffs' counsel was unable to determine Defendant's identity after significant research efforts. (Verified Complaint, ¶ 36.; Giftos Decl. ¶¶ 4-19.)

31. Plaintiffs' efforts to remove the Defamatory Article and/or identify the Defendant have included (without limitation) the following activities:

   a. Extensive research of the Website to search for phone numbers, mailing addresses, and email addresses.

   b. On April 25, 2017, Plaintiffs reached out to Automattic, Inc., the owner of Wordpress.com, the website that hosts the offending Website, in the form of a "takedown notice" to counsel for Automattic, Inc. On April 26, 2017, Plaintiffs received an email response from Automattic, Inc., stating it would not remove the Defamatory Article absent a court order.

c. On April 28, 2017, Plaintiffs' sent the Defendant a message through its contact form on the Website, explaining that the Defamatory Article contained false information and requesting correction or removal of the Defamatory Article. Plaintiffs received no response from Defendant.

d. On April 28, 2017, Plaintiffs submitted a takedown notice to the Google.com internet search engine. Plaintiffs received no response. Google's website states that a court order is required to remove content from its search engine.

e. On April 28, 2017, Plaintiffs submitted a takedown notice to the Bing.com internet search engine. Representatives from Bing.com responded on April 29, stating that information must be removed by contacting the owner of the offending Website and having them remove the article.

f. On April 28, 2017, Plaintiffs submitted a takedown notice to the Yahoo internet search engine. Plaintiffs received no response to this communication. Yahoo's website states that a court order is required to remove content from its search engine.

g. On or about April 28, 2017, Plaintiffs contacted several other websites that had republished or linked to the Defamatory Article, and requested that they remove the defamatory content. One of the publishers removed the content. The remaining two publishers did not respond and did not remove the content.

h. In June 2017, Plaintiffs explored the possibility of removing or "burying" the article in search results by engaging a Search Engine Optimization ("SEO") company. SEO companies create content and manipulate "hits" to websites in order to place internet content, such as the Defamatory Article, lower in

search engine results. Plaintiffs received an estimate of $100,000 - $150,000 to "bury" the Defamatory Article on the second page of search engine results. However, these efforts would still not result in the removal of the Defamatory Article.

i. Plaintiffs conducted extensive research on the offending Website and related social media sites in an attempt to locate and identify the Defendant(s). During this research, it became very clear that the operator(s) of the offending Website has taken great efforts to conceal his or her identity.

j. Plaintiffs filed this action on July 18, 2017, as a last resort, when it became clear that non-judicial recourse would not achieve correction or removal of the Defamatory Article.

k. On July 18, 2017, Plaintiffs contemporaneously filed its Motion for Leave to Conduct Limited Discovery Prior to Rule 26(f) Conference (ECF No. 3).

l. The Court granted Plaintiffs' motion on August 9. (ECF No. 8.)

m. On August 10, Plaintiffs served a Rule 45 subpoena on Automattic, Inc.

n. On August 28, counsel for Automattic, Inc. informed Plaintiffs' counsel that the Defendant had not moved to quash the subpoena, so she provided limited information in response to the subpoena.

o. The limited information provided by Automattic was insufficient to identify the operator(s) of the offending website. Counsel for Plaintiffs conducted extensive research to lookup the listed social media and e-mail accounts and IP addresses associated with the offending Website's registration with Wordpress.com.

p.  Based on online tools that may be used to locate IP addresses, the IP address captured by Automattic, Inc. at the time the Website was created in 2012 is located in the United Kingdom.

q.  However, Defendant's social media sites identify "New York" as its location.

r.  Despite several follow up attempts to research Defendant based on the information provided by Automattic, Inc. and other online sources, we could not identify Defendant's actual location.

s.  Defendant appears to be using only free online services and social media accounts that do not require the disclosure of accurate personally identifiable information to create an account.

t.  On August 28, Plaintiffs' counsel spoke with counsel for Automattic, Inc. to discuss the limited information provided and confirm that it had no other information responsive to the subpoena. Plaintiffs' counsel also sent an e-mail to counsel for Automattic, Inc., seeking confirmation that it had no other information responsive to the subpoena.

u.  On August 28, 2017, Plaintiffs also requested that Automattic, Inc.'s counsel confer with Automattic, Inc. to see if Automattic, Inc. would remove the article given the circumstances of the case.  Automattic, Inc. responded that its policy is only to remove content pursuant to a court order.

v.  On August 29, Plaintiffs filed a second request with Automattic, Inc., through its online form, to remove the Defamatory Article. That request was rejected.

(Giftos Decl., ¶¶ 4-19.)

9

## IV. DISCOVERY OF ARTICLE AND LIKELIHOOD OF IRREPARABLE HARM

32. Plaintiffs have learned that at least one individual has identified the Defamatory Article. (*See* Declaration of Richard Hart, September 1, 2017, ECF #13 "Hart Decl.", ¶¶ 9-10, Ex. A.)

33. Plaintiffs are extremely concerned that others will also find the Defamatory Article as Plaintiffs are involved in a high profile art exhibit, which will include events with numerous individuals and extensive media coverage. (Hart Decl., ¶¶ 3-9, 11.)

34. Specifically, portions of the art and jewelry collection owned by Plaintiffs' foundation will be exhibited at the Ducal Palace or the MUVE, Fondazione Musei Civici Venezia museum in Venice, Italy from September 9, 2017 through January 3, 2018 ("Venice Art Exhibit"). Information on the above-referenced art exhibit may be found at: http://palazzoducale.visitmuve.it/it/mostre/mostre-in-corso/tesori-dei-moghul-e-dei-maharaja/2017/03/18151/la-collezione-al-thani/ (Hart Decl., ¶¶ 3-4.)

35. Plaintiffs' respective reputations will be irreparably and permanently harmed if the Defamatory Article is discovered and viewed by additional attendees of the Venice Art Exhibit, or any other individuals. (Hart Decl. ¶ 12.)

36. The Defamatory Article's attribution of child rape to Plaintiff His Highness Al-Thani is despicable, vile, and wholly false. However, individuals viewing the Defamatory Article do not have the means to confirm the veracity of the information contained therein, making it particularly harmful to Plaintiff His Highness Al-Thani, as well as Plaintiff QIPCO. (Hart Decl. ¶ 13.)

Dated: September 5, 2017

        **HUSCH BLACKWELL LLP**
        *Attorneys for Plaintiffs*

       *s/ Melinda S. Giftos*
         Melinda S. Giftos
         State Bar No. 1056609
         Jordan Corning
         State Bar No. 1085034
         P.O. Box 1379
         Madison, Wisconsin 53701-1379
         608-255-4440
         608-258-7138 (fax)
         mindi.giftos@huschblackwell.com
         jordan.corning@huschblackwell.com