UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

QATAR INVESTMENT & PROJECTS
DEVELOPMENT HOLDING COMPANY W.L.L. (QUIPCO)

and

HIS HIGHNESS SHEIKH HAMAD BIN ABDULLAH BIN KHALIFA AL-THANI

       Plaintiffs,

v.                                                                                    Case No. 17-CV-553-jdp

JOHN DOE
a/k/a "The Muslim Issue"

       Defendant.

**NON-PARTY AUTOMATTIC, INC.'S REQUEST TO MODIFY THE COURT'S ORDERS GRANTING A TRO AND NAMING AUTOMATTIC**

Automattic Inc. ("Automattic"), a non-party to the above-captioned matter, respectfully requests that the Court modify its September 6, 2017 and October 3, 2017 orders granting Plaintiffs' motion for a temporary restraining order ("TRO"). Specifically, Automattic requests that the Court modify the orders to (1) require the defendant to remove any content found to be defamatory, rather than nonparty Automattic; and (2) include the specific posts the court requires to be removed. These modifications are critical, as Automattic is a nonparty, and is neither "in active concert" with defendant nor is Automattic defendant's "officer[], agent[], servant[], [or] attorney[]. F.R.C.P. 65(d)(2). Further, the broad injunctive language included in the TROs has made it difficult for Automattic to comply, as Plaintiffs' counsel has repeatedly contacted Automattic requesting additional posts to be removed, most recently on October 6, 2017. Automattic has therefore been placed in a difficult situation: remove material that may not be

defamatory to ensure compliance with the TRO, or refuse to remove it and risk contempt. Automattic therefore respectfully requests that the Court modify the TRO.

## FACTUAL BACKGROUND

Automattic is a Delaware corporation headquartered in San Francisco, California. Automattic has a singular mission: make the web a better place. Declaration of Jenny Zhu, ¶ 2. All of Automattic's products and services are designed to democratize online publishing so that anyone with a story can tell it. *Id.* Automattic is best known for WordPress.com. *Id.* The code behind WordPress is open-sourced, meaning that anyone can download, use, and modify it, for free, and that the code is developed, supported and maintained by a broad community of users. *Id.* WordPress is the web's most popular Content Management System and proudly powers millions of websites—over 25% of the web. *Id.* at ¶ 3. The founding developer of WordPress also founded Automattic and created WordPress.com to make WordPress available to users lacking the time or coding know-how to undertake the technical intricacies of creating and maintaining a website. *Id.* WordPress.com allows anyone, from bloggers, to photographers, small business owners, and large enterprise companies to easily create an online presence on the web platform that powers more thoughts, musings and businesses than any other hosting service in the world. *Id.* Individuals (known as "users") can sign up for a free blog through www.WordPress.com after agreeing to the Terms of Service and providing an e-mail address for their account. *Id.* at ¶ 4. Once a blog is posted, it is visible to the public (unless otherwise restricted) and visitors to the blog can post comments on it. *Id.* WordPress.com's legal guidelines state that "WordPress.com strongly believes in freedom of speech. We have a vast audience spread across many cultures, countries, and backgrounds with varying values and our service is designed to let users freely express any ideas and opinions without us censoring or

endorsing them….If we receive a complaint and are not in a position to make a determination (for example whether something is defamatory or not), we defer to the judgment of a court." *Id.* at ¶ 5.

Plaintiffs sought and were granted a temporary restraining order which, in part, required Automattic to "remove any picture of Hamad bin Abdullah bin Khalifa al-Thani and all references to Khalifa al-Thani and QIPCO from The Muslim Issue's blog posts about Hamad bin Abdullah bin Thani al-Thani published at https://themuslimissue.wordpress.com/2015/10/13czech-republic-qatar-pedophile-prince-hamad-bin-abdallah-al-thani-issued-warrant-for-ex-abuse/ and https://themuslimissue.wordpress.com/2017/09/05/quatari-prince-hamad-bin-abdallah-al-thani-sues-tmi-for-reporting-european-sex-abuse-warrant/." (September 6, 2017 TRO at 4.) Automattic has complied with the September 6 TRO.[1] Zhu Decl., ¶ 6.

The October 3 TRO required Automattic to "remove any text or photos from any The Muslim Issue post that insinuate that Khalifa al-Thani or QIPCO are connected to the charges against Hamad bin Abdullah bin Thani al-Thani." Plaintiffs' counsel indicated on October 3, 2017 that October 3, 2017 Order required removal of the following posts:

- https://whatisislamophobiaandisitreal.wordpress.com/2015/10/13/czech-republic-qatar-pedophile-prince-issued-warrant-over-sex-abuse-the-muslim-issue/

- https://vivienneericka.wordpress.com/2017/09/05/qatari-prince-hamad-bin-abdallah-al-thani-sues-tmi-for-reporting-european-sex-abuse-warrant/

- https://vivienneericka.wordpress.com/page/9/

---

[1] Following receipt of the September 6 TRO, Automattic's counsel requested that Plaintiffs provide notice if they intended to seek any future orders seeking Automattic to remove any content. Automattic also requested that if such additional orders were sought, that they be directed to the user rather than Automattic. Morton Decl., ¶ 2. Despite this request, Automattic was not given notice of Plaintiffs' motion to seek a second TRO.

Morton Declaration, ¶ 3.  Automattic confirmed that the three posts above had been presented to the Court in the motion for an additional TRO and then complied with the October 3 TRO. Morton Decl., ¶ 3;  Zhu Decl., ¶ 6.

On October 5 and 6, Plaintiffs' counsel again contacted Automattic requesting removal of another post, this time one that mentions Ms. Giftos and her law firm.  Morton Decl., ¶ 4, Ex. 1. Initially, counsel indicated that there was no "objection (from a legal standpoint) to this content generally," but expressed concerns regarding the inclusion of her name. *Id.*  The following day, counsel then decided that upon "reading it carefully again today, not only is it disparaging and threatening against my law firm and myself personally, the article once again suggests that my client was somehow involved in the previously reported crimes in the original defamatory article that started all of this." *Id.*

The email further claimed that counsel believes "that this article insinuates that my client is connected to the crimes, it…must be removed."  *Id.*   Although the referenced link https://themuslimissue.wordpress.com/2017/09/27/qatars-non-profits-links-to-u-s-specially-designated-global-terrorists/ does reference Plaintiff Sheikh bin Khalifa al-Thani, it does not accuse him of engaging in the conduct discussed in the original post.  The relevant portion states that "Husch Blackwell is exploiting American law by implying that bin Khalifa being mentioned, although he was not exactly accused, is somehow 'defamatory' to him or casue some form of personal injury.  The claims are pure perjury.  In reality, they see nothing wrong in these crimes." *Id.*  After review of this post, Automattic was unable to determine whether it violated the October 3 TRO. Zhu Decl., ¶ 7. Automattic met and conferred with Plaintiffs and agreed to seek a clarification of the Court's TROs to address the new posts and to also request that the Court name Defendant rather than non-party Automattic. Morton Decl., ¶ 4.  The Court denied

the requested modification on October 12, 2017 (the "October 12 Order") and invited Automattic to seek a modification "directly."[2] Automattic hereby requests such a modification.

## ARGUMENT

### A. The TROs Should Be Modified To Remove Non-Party Automattic

Fed. R. Civ. P. 65 codifies two categories of nonparties that may be bound by injunctions: those in active concert or participation with parties and those legally identified with the parties. Automattic does not fit in either category, as it is not in privity with defendant and has not taken any actions since the injunctions were entered to assist defendant in violating the Court's order.

In *Blockowicz v. Williams*, 630 F.3d 563, 568 (7th Cir. 2010), the court examined exactly the situation at issue here: whether a nonparty internet host could be required by an injunction to take down website content of a third party. The *Blockowicz* trial court refused to enforce an injunction against Xcentric, the website host. *Id.* at 563. The ruling was upheld on appeal. *Id.* The court found that Xcentric did not fall within Rule 65. *Id.* at 568. "Actions that aid and abet in violating the injunction must occur after the injunction is imposed for the purposes of Rule 65(d)(2)(C), and certainly after the wrongdoing that led to the injunction occurred." *Id.* With respect to Xcentric's post-injunction actions, the court found that "the fact that Xcentric is technologically capable of removing the postings does not render its failure to do so aiding and abetting." *Id.*

Although it is true that Xcentric was not named in the injunction at issue in *Blockowicz,* and non-party Automattic has been named here, the critical holding of *Blockowicz* is directly on

---

[2] Automattic was not attempting to avoid making an appearing by consenting to Plaintiffs' request, but was rather trying to work with Plaintiffs to resolve the issues.

point: Rule 65 can only enjoin non-parties in certain limited situations.[3] Simply, Automattic does not fit into any of the limited exceptions to this rule.

Plaintiffs here, as in *Blockowicz,* have not alleged any *post-injunction activity* by Automattic that would indicate "active participation." Automattic has removed posts three times pursuant to the TRO and has complied with two subpoenas issued by Plaintiffs. Automattic's actions have been and continue to be independent of defendant and do not constitute aiding and abetting. *Id.* at 568; *See also* Fed. R. Civ. P. 65(d)(2); *Regal Knitwear Co*., 324 U.S. at 13 ("The courts … may not grant …an injunction so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law.").

Plaintiffs also have not alleged that Automattic is in privity with defendant.[4] Indeed, Automattic is not an officer, employee, or attorney for defendant, and has never represented itself as or acted as defendant's agent or servant. Zhu Decl., ¶ 8. Like Xcentric in *Blockowicz,* Automattic has done nothing "since agreeing to the Terms of Service with [defendant], which [Automattic] did before the injunction was issued and before the statements at issue were even posted." *Blockowicz,* 630 F.3d at 568.

The Court cited *H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012) in the October 12 Order. In the Court's September 6, 2017 order for the proposition that "[T]he district court has broad authority to enjoin third parties who receive appropriate notice of the court's injunctive order." October 12 Order at 2, *citing H-D Mich*. However, the *H-D Mich* Court modified this broad statement in the next sentence, stating,

---

[3] The *Blockowicz* Court noted that "Whether we consider this a suit for contempt or simply a motion to enforce an injunction against third parties, however, our analysis under Rule 65(d)(2)(C) is the same." *Blockowicz,* 630 F.3d at 567.

[4] The Plaintiff bears the burden of proving that "any third party it [seeks] injunctive relief as to was within the scope of the injunction it [seeks] to enter." *Ixmation, Inc. v, Switch Bulb, Company, Inc.,* No. 14-cv-6933, 2014 WL 5420273, n4 (N.D. Ill., Oct. 23, 2014); *see also Blockowicz,* 630 F.3d at 567.

"Nonparties …may be subject to that court's jurisdiction if, with actual notice of the court's order, *they actively aid and abet a party in violating that order*." *H-D Mich,* 694 F.3d at 842 (emphasis added). The Court further stated that "Should any non-party believe that it has been enjoined improperly, it is free to seek a modification or clarification from the district court, which might be able to consider whether, for example, a dealer or distributor *would qualify as an agent of [Defendant]*." *Id.* (emphasis added). Here, there has been no allegation or finding that Automattic is an agent of Defendant or is aiding and abetting the defendant in violating the order. As in *Blockowicz,* Plaintiffs have presented no evidence showing that Automattic has engaged in any post-injunction actions that indicate "active participation" with Defendant. *See Blockowicz,* 630 F.3d at 568. Further, the *H-D Mich* Court makes clear that a non-party can "seek a modification or clarification" from the court, which is what Automattic attempted to do in concert with Plaintiffs and does here.

The Court also cited *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.,* 724 F.3d 854 (7th Cir. 2013) in the October 12 Order, but *ADT* does not decide whether a non-party can be enjoined. In *ADT*, a third party, Du-Comm, intervened in an appeal of an injunction, arguing that it was a non-party and should not be bound by the injunction at issue. *Id.* at 872. The parties disputed whether Du-Comm fell within the "agent" exception in Rule 65, as it was "governed and directed by a board made of representatives from its member agencies, including" defendant. *Id.* The Court declined to decide whether Du-Comm was an agent of the defendant, instead holding that "the injunction does not apply directly to Du-Comm." *Id.* Here, the TROs directly name non-party Automattic.

For these reasons, Automattic respectfully submits that it is not in the class of non-parties who may be bound by injunctions under Rule 65, and requests that the Court modify the

injunction to name defendant.  Plaintiffs have contact information for defendant and can also contact defendant through the blog.  This dispute is between Plaintiffs and the defendant who authored the various publications, and not between Plaintiffs and Automattic.

## The TROs Should Be Modified To Specify Content

Automattic respectfully requests that the Court modify its previous orders entered on September 6, 2017 and October 3, 2017 to specifically identify the content to be removed.  Rule 65 requires that any injunction describe "in reasonable detail" the acts required.  A broad restraining order such as the one requested by Plaintiffs puts Automattic in the position of deciding whether the blog posts insinuate, by word or picture, Plaintiffs' contact to the charges.  If Automattic is not inclusive enough in its decisionmaking, it risks violating the Court's order.  If Automattic is too inclusive, it risks removing speech protected by the First Amendment.  Such decisions are not always clear cut, and especially in situations such as this one implicating free speech, the Court is the best decision-maker.  Should Plaintiffs later discover related website content that they contend is defamatory, Plaintiffs can request an order from the Court specifically naming the URL of any such post and/or website.  This serves as a check on parties who might otherwise request broad takedowns that include protected speech and as a protection for enjoined parties trying to comply with an order.

Dated this 16th day of October, 2017.

                                             BOARDMAN & CLARK LLP

                                             /s/  Richard L. Bolton

Richard L. Bolton, SBN 1012552
One South Pinckney Street, Suite 410
Madison, Wisconsin 53703-4256
608-257-9521 || 608-283-1709 fax
Attorneys for Non-Party Automattic, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2017, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record registered for electronic filing

Case: 3:17-cv-00553-jdp   Document #: 32   Filed: 10/16/17   Page 9 of 9